IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONTROSE EDUCATIONAL SERVICES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: RDB 06-308 |
| | * | |
| SYLVAN LEARNING SYSTEMS, INC. a/k/a LAUREATE EDUCATION, INC. | * | |
| | * | |
| and | * | |
| | * | |
| SYLVAN LEARNING SYSTEMS, INC. a/k/a EDUCATE, INC., | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This action arises out of a Complaint filed by Montrose Educational Services, Inc. ("Montrose" or "Plaintiff") against Sylvan Learning Systems, Inc., a/k/a Laureate Education, Inc. ("Laureate") and Sylvan Learning Systems, Inc., a/k/a Educate, Inc. ("Educate") (collectively "Sylvan" or "Defendants"[1]). The Complaint alleges that Defendants made fraudulent representations to induce Plaintiff to enter into a franchise agreement and then breached their contractual duties by failing to provide Plaintiff with proper assistance. Pending before this Court is the Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment. This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. The parties' submissions have been reviewed and no

---

[1] At some point after Montrose entered into a contract with Laureate Education, Inc., Laureate sold its franchising business to Education, Inc. As the record is not clear whether Laureate or Educate engaged in the conduct giving rise to this lawsuit, for the purposes of this Memorandum Opinion, this Court will refer to the two entities jointly as "Defendants."

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' motion is DENIED with respect to Plaintiff's claim for tortious interference with business relationships and GRANTED with respect to all other causes of action.

## BACKGROUND AND PROCEDURAL HISTORY

On July 24, 2000, Plaintiff Montrose Educational Services, Inc. ("Montrose"), a California corporation, entered into a franchise contract with Defendant Sylvan Learning Systems, Inc., a/k/a, Laureate Education, Inc. ("Laureate"), a Maryland corporation. Specifically, Montrose purchased a "territory" in Grass Valley, California, in which to operate a Sylvan Learning Center. During the pre-contractual negotiations in 2000, representatives from Laureate presented certain demographic information from 1998 to Montrose regarding Grass Valley. Laureate used this demographic information to determine the purchase price of the Grass Valley territory, and Montrose relied on this information in its decision to buy that particular territory.

Under the terms of the license agreement between Montrose and Laureate, Montrose promised to pay to Laureate certain fees—initially and monthly thereafter—and to operate its Grass Valley Sylvan Learning Center in compliance with Sylvan's standards of operation. (Def.'s Mem. Supp. Summ. J. Ex. 1, §§ 6-7 [hereinafter "License Agreement"].) In return, Laureate promised to provide supervision and assistance to Montrose, most notably through its Quality Assurance Review, which was to be conducted "approximately one hundred twenty (120) days after Licensee first opens its Center."[2] (License Agreement § 4.2.4.) The license

---

[2] There is conflicting evidence as to when the Quality Assurance Review was to be conducted. Unlike the 120 days listed in the License Agreement, the "Franchisor's Obligations" stipulated that the review was to be conducted "[a]pproximately 180 days after [Montrose]

agreement also contained a disclaimer that "[l]icensee [Montrose] acknowledges that it has not received or relied upon any warranty or guarantee . . . as to the potential . . . success of the business venture contemplated by this agreement, or as to the suitability of the site as a successful location for its center." (*Id*. § 24.1.) At some point after Montrose and Laureate entered into this contract, Laureate sold its franchising business to Educate, Inc. ("Educate").

On January 1, 2001, Montrose opened a Sylvan Learning Center in Grass Valley pursuant to the license agreement. Defendants continued to supply demographic information to Montrose concerning the number of students in Grass Valley eligible for Sylvan's services. (*See* Pl.'s Opp'n Summ. J. Exs. 8-11.) However, Defendants allegedly did not offer much support to Montrose's center and did not conduct a Quality Assurance Review until late 2002 or early 2003. (*See id.* at Ex. 2, p. 2.)

From early 2002 to 2003, Montrose negotiated with the owners of two other Sylvan Learning Center franchises in Reno, Nevada, and Mobile, Alabama, in an attempt to purchase those franchises. During these negotiations, but before any sales were finalized, Defendants allegedly spoke to the Reno and Mobile franchise owners and told them that they would get a higher purchase price if they allowed Defendants to broker the sale to outside buyers rather than selling to Montrose. Montrose was not able to purchase either franchise.

On February 6, 2006, Montrose filed a Complaint against Laureate Education, Inc. in this Court. On March 13, 2006, the Plaintiff filed an Amended Complaint (Paper No. 4) adding

---

opened [its] Center." (Pl.'s Opp'n Summ. J. Ex. 1, p. 23.) The specific number of days is of no moment, however, as the review did not occur until approximately *two years* after the opening of the Grass Valley center. (*See id.* at Ex. 2, p. 2.)

Educate, Inc. as a defendant and seeking damages in connection with five causes of action.[3] (Paper No. 4.) The First Cause of Action alleges breach of contract. The Second Cause of Action alleges breach of the covenant of good faith and fair dealing.[4] The Third Cause of Action alleges fraud. The Fourth Cause of Action alleges negligent misrepresentation. The Fifth Cause of Action alleges tortious interference with business relationships.

On April 24, 2006, Defendants filed the subject Motion to Dismiss the First Amended Complaint, or in the Alternative, Motion for Summary Judgment. (Paper No. 6.) Because the parties attached extrinsic documents to their briefs for this Court's consideration, Defendants' Motion to Dismiss may alternatively be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."); *Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to dismiss as motion for summary judgment where the Court had to consider "two items of evidence extrinsic to the pleadings" including the plaintiff's EEOC charge); *Talbot v. U.S. Foodservice, Inc.*, 204 F. Supp. 2d 881, 882 (D. Md. 2002) (same).[5]

---

[3] In its Amended Complaint, Plaintiff made no substantive changes to the original Complaint but merely added Educate, Inc. as one of the named Defendants.

[4] Plaintiff has withdrawn its Second Cause of Action and "incorporates the allegations made therein into its First Cause of Action." (Pl.'s Opp'n Summ. J. 15.)

[5] Under Rule 12(b), all parties must be given "reasonable opportunity" to present relevant information to this Court. This requirement may be satisfied if a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Courts also consider whether a party captions its own pleading as one for or in opposition to

## **STANDARD OF REVIEW**

The Defendants have moved to dismiss this cause of action contending that the Plaintiff's claims are barred by the statute of limitations and that Counts II through V fail to state a claim upon which relief can be granted.  A motion to dismiss for failure to state a claim is asserted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A statute of limitations defense may be brought under Rule 12(b)(6) if the time bar is apparent from the face of the complaint.  *Dean v. Pilgrims Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).  The Defendants have alternatively moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by seeking to have this Court consider matters outside of the pleadings.

"The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l*

---

summary judgment.  *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (finding that the plaintiff had reasonable opportunity "[o]n the basis of her own actions— captioning her memorandum and filing affidavits" and that the court "does not have an obligation to notify parties of the obvious").  Given that the Defendants in this case moved for dismissal *or* summary judgment, that the Plaintiff captioned its Opposition, (Paper No. 11), in a similar fashion, and that both the Defendants and the Plaintiff attached documents to their briefs, all three parties were certainly on notice that this Court might make a summary judgment determination.  In addition, Plaintiff did not request additional time for discovery in its Opposition.  Thus, they have had a reasonable opportunity to provide material regarding summary judgment, in satisfaction of Rule 12(b).

*Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

Where the parties present matters outside the pleadings and the Court considers those matters, the motion is treated as one for summary judgment. *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997). Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita*

*Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

## **DISCUSSION**

As the jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, Maryland substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A.  **Statute of Limitations**

The Defendants first argue that all of the Plaintiff's causes of action setting forth claims both in contract and tort are time-barred. Each of Plaintiff's claims are subject to a three-year statute of limitations in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). Defendants contend that all of Montrose's causes of action arose in January of 2001 when it opened the Grass Valley Sylvan Learning Center. (Defs.' Mem. Supp. Summ. J. 2, 4-5.) In support, they point to language in the Amended Complaint providing as follows: "*In January 2001*, Montrose opened a learning center in Grass Valley, CA pursuant to the contract with Sylvan. *Since* that opening, [Defendants] have consistently ignored and/or refused their obligations to Montrose in numerous ways on numerous occasions. . . ." (Am. Compl.¶¶ 9-10 (emphasis added).) Defendants argued that the term "since" means that "Plaintiff has admitted that it was aware of the bases for alleging the causes of action set forth in Counts I-V" in January of 2001. (Defs.' Mem. Supp. Summ. J. 5.) Because the instant case was filed more than five years later,

Defendants argue, it is barred by the statute of limitations. (*Id.* at 4-5.)

The Maryland Court of Appeals has adopted the "discovery rule" which provides that a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). Plaintiff argues that all of its claims "were brought within three years of [its] *discovery* of Defendant's wrongdoing." (Emphasis added.) (Pl.'s Opp'n Summ. J. 2.) In applying the Maryland "discovery rule", it is necessary to analyze each of the Plaintiff's causes of action separately.

With respect to the Plaintiff's causes of action setting forth a breach of contract claim, Plaintiff contends that Defendants' obligations under the licensing agreement were continuous and that under the discovery rule, a new cause of action arose each time it became aware of a breach. (Pl.'s Opp'n Summ. J. 2.) It relies on *Singer Co. v. BG&E*, 558 A.2d 419, 425-26 (Md. Ct. Spec. App. 1989), in which the Maryland Court of Special Appeals held that "where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously. . . ." *Id.* at 426. Plaintiff first alleges that Defendants breached the license agreement when they failed to conduct a Quality Assurance Review within 180 days from the opening of the Grass Valley center in January of 2001. As this action was filed on February 6, 2006, Plaintiff must argue that it did not know or reasonably should not have known of Defendants' breach of contractual obligations by February 6, 2003. With respect to the contractual obligations of the Defendants, including the failure to conduct any quality assurance review for over two years, the Plaintiff clearly knew of facts which would give rise to a breach of contract claim within the first two years of the contract.

The Plaintiff cannot find safe harbor in the concept of a continuing breach of contract. Plaintiff's broad reading of the *Singer* case has been previously rejected by this Court. *See Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 990 (D. Md. 2002) (distinguishing *Singer* on grounds that "[a]ll the "actions" that [the plaintiff] attributes to [the defendants], however, are but one *action*. The alleged statutory violation, though continuing, is solitary.") (emphasis in original); *Ruddy v. Equitable Life Assurance Society of U.S.*, No. 00-70, 2000 WL 964770, at *5 (D. Md. 2000) (distinguishing *Singer* on grounds that "[h]ere, while there was a continuing obligation on the part of Equitable to live up to its alleged promises, there was only a single breach from which all of Plaintiff's harm flowed.") (unpublished). Like the plaintiffs in *Miller* and *Ruddy*, Plaintiffs cannot rely on *Singer* to avoid the three-year statute of limitations set forth in Md. Code Ann., Cts. & Jud. Proc. § 5-101. Accordingly, the first cause of action for breach of contract, as well as the second cause of action—which has since been withdrawn by the Plaintiff— are barred by the statute of limitations.

The claims of fraud, negligent misrepresentation, and tortious interference with business relationships require a separate analysis with respect to a statute of limitations defense based on the Maryland "discovery rule". The Plaintiff alleges that the Defendants provided false and misleading demographic information in 2000 while the parties were in negotiations prior to the signing of the franchise agreement. By any measure, Montrose must have been aware of facts prior to February 6, 2003, with respect to the "demographics of the territory" and "value of the territory" upon which it could base the causes of action of fraud and negligent misrepresentation as set forth in the third and fourth causes of action. By the very nature of the allegations of fraud and negligent representation, the Plaintiff all but admits of its awareness for the bases of these

causes of action.

According Plaintiff every inference and viewing the facts in the light most favorable to the Plaintiff, this Court considers matters outside of the pleadings in analyzing the statute of limitations defense. Therefore, this Court treats the Defendants' motion on these causes of action as one for summary judgment under Rule 56(c). After reviewing the parties' submissions, this Court holds as a matter of law that there are no genuine issues of material fact with respect to the clear knowledge of the Plaintiff during the first two years of the contract in question. Quite simply, no fair-minded jury could find that the Plaintiff had not discovered sufficient information to give rise to the causes of action for breach of contract, fraud, or negligent misrepresentation by February 2003—three years prior to the filing of this action. Accordingly, these causes of action are barred by the statute of limitations and, as a matter of law, the Defendants' Motion for Summary Judgment is GRANTED as to the first four causes of action in this case.

With respect to the Montrose's claim of tortious interference with business relationships as set forth in the fifth cause of action, the Plaintiff has alleged that from early 2002 "until around or about May 2003" it was engaged in negotiations with the owners of two other Sylvan Learning Center franchises. According to emails dated February 24, 2003, and July 12, 2004, those owners were interested in selling their franchises to Montrose. (Pl's Oppn. to Summ. J., Exhs., 4-5) Therefore, any interference by the Defendants would have occurred after February 6, 2003 and within the three year time period prior to the filing of this action. This Court finds that this last cause of action survives a statute of limitations defense and must be evaluated under Rule 12(b)(6) and/or Rule 56.

### B. Tortious Interference with Business Relationships

Defendants seek summary judgment on Montrose's claim for tortious interference with business relationships on the grounds that "Plaintiff has failed to allege the existence of a contract between itself and any of the identified third-parties." (Defs.' Mem. Supp. Summ. J. 10.)  It appears that Defendants have misread the Amended Complaint.  The Fifth Cause of Action purports to state a claim for "Interference with Business Relationships," (Am. Compl. ¶ 9), which is a separate cause of action than tortious interference with a *contractual* relationship. According to the Amended Complaint, in 2002 and 2003, Montrose "engaged in negotiations with the owners of two other Sylvan Learning Center Franchises (one in Reno, Nevada, and one in Mobile, Alabama) in an effort to purchase those franchises." (Am. Compl. ¶ 43.) "[D]uring the negotiations . . . [Defendants] contacted one of the owners of the Mobile franchise in an attempt to prevent her from selling to Montrose." (*Id*. ¶ 44.)  In addition, "after Montrose and the owner of the Reno franchise sent a signed letter of intent to [Defendants], [Defendants] contacted the owner of the Reno franchise in an attempt to prevent him from selling to Montrose." (*Id*. ¶ 47.)  While Defendants are correct that the Amended Complaint makes no mention of a contract between Montrose and the two other Sylvan franchises, Plaintiff need not make such an allegation to state a claim for, or ultimately prove, tortious interference with *business* relationships.

It is well established that "Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms: 'inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships. . . .'" *Alexander v. Evander*, 650 A.2d 260, 268 (Md. 1994) (citing *Natural*

*Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)).  In order to bring a claim for the tort of wrongful interference with economic or business relationships, therefore, a plaintiff need not have entered into a contract with a third party.  *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 348 (4th Cir. 2006) (recognizing that a "claim for interference with economic relations" allows "a plaintiff to sue even when 'no contract or a contract terminable at will is involved'") (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 113 (Md. 1994)).  Rather, a plaintiff must simply show: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[] in [its] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting."  *Berlyn, Inc. v. Gazette Newspapers*, 223 F. Supp. 2d 718, 741 (D. Md. 2002).

As noted above, Montrose engaged in negotiations to purchase Sylvan franchises in Reno and Mobile in 2002 to 2003.  (*See* Pl.'s Opp'n Summ. J. Exs. 4, 16.)  During the process of negotiations, Defendants allegedly contacted the Reno and Mobile franchise owners in an effort to convince them not to sell to Montrose, but rather to allow Laureate to broker the sale to potential buyers outside the Sylvan system.  (Am. Compl. ¶¶ 44-48.)  As a result, Montrose claims that it lost the opportunity to buy either franchise.  (*Id*. ¶ 53.)  Plaintiff claims that Defendants "willfully and intentionally interfered with [its] business relationships with the owners of both the Reno and Mobile businesses," that the interference "was calculated to cause damage to Montrose in its lawful business," and that Defendants acted "with the unlawful purpose to cause such damage and loss, and without right or justifiable cause."  (*Id*. ¶¶ 50-52.)

After reviewing the parties' submissions, this Court is satisfied that discovery is needed with respect to Plaintiff's cause of action for tortious interference with business relationships.  It

is not appropriate at this early stage in the case for this Court to resolve this cause of action by converting Defendant's motion to one for summary judgment and applying the standards set forth in Rule 56 of the Federal Rules of Civil Procedure. It is well established that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)). Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED with respect to Plaintiff's Fifth Cause of Action for Tortious Interference with Business Relationships.[6]

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment is DENIED with respect to Plaintiff's claim for tortious interference with business relationships and GRANTED with respect to all other causes of action. A separate Order follows.

Dated: March 30, 2007                             /s/
                                                                         Richard D. Bennett
                                                                         United States District Judge

---

[6] Defendants also argue that Plaintiff's tort claims are barred by the "economic loss rule." (Defs.' Mem. Supp. Summ. J. 9-10.) Under that rule, when a "controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, it is plainly contract law which should provide the rules and principles by which the case is to be governed." *Flow Indus., Inc. v. Fields Constr. Co.*, 683 F. Supp. 527, 530 (D. Md. 1988); *see also Martin Marietta v. Intern. Tel. Satellite*, 991 F.2d 94 (4th Cir. 1992). With respect to the single remaining cause of action, Montrose is claiming economic damages for losses arising out of Defendants' allegedly tortious conduct. The viability of this defense with respect to the remaining count must await discovery and further briefing by the parties.